**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|   |   |   |
|---|---|---|
| JOSE D. BUENROSTO, | : | Civil Action No. 12-7205 (RBK) |
| Petitioner, | : | |
| v. | : | **OPINION** |
| DONNA ZICKEFOOSE, | : | |
| Respondent. | : | |

Petitioner Jose D. Buenrosto ("Petitioner")[1] submitted a habeas petition ("Petition"), pursuant to 28 U.S.C. § 2241, see Docket Entry No. 1, and – following this Court's order denying him in forma pauperis status – prepaid his filing fee.  See Docket Entry No. 2 and Docket Entry dated 12/11/2012.  Petitioner is a federal inmate held at F.C.I. Fort Dix.[2]  See id. at 1.

---

[1] Petitioner's actual name is "Jose Buenrost**r**o," see Docket Entry No. 1, at 18, even though his Petition is captioned with his name spelled without the second "r."  See id. at 1.

[2] Pursuant to an indictment alleging controlled substance offenses, Petitioner was convicted by the United States District Court for the District of Nebraska and sentenced to 180-month imprisonment.  See USA v. Buenrostro, 09-0383 (LES) (D. Neb.). Apparently, the offenses were detected when

> a state trooper pulled over [Petitioner] and passenger Luis Trejo-Diaz for speeding on Interstate 80 in western Nebraska in a sport-utility vehicle (SUV).  The trooper . . . asked dispatch to run a check on [Petitioner's] criminal history. Dispatch informed the trooper that Buenrostro had a prior felony drug conviction . . . . When the trooper asked [Petitioner] questions about his travel plans, [Petitioner]  gave contradictory responses regarding his destination and

Petitioner asserts that he is an alien detainee, see Docket Entry No. 1, at 10, even though he is a convicted federal inmate. This Court, therefore, presumes that Petitioner strives to assert that he is a removable alien currently serving his federal term.

Petitioner claims that his rights, as well as the rights of his family members, have been violated because Petitioner's family allegedly resides in California, while he is housed as Fort Dix, New Jersey, and he wishes to be housed closer to his family's place(s) of residence. See id. Petitioner maintains that he is being discriminated on the basis of his removable detainee status, since he is under the impression that federal inmates who are United States citizens are necessarily housed within 500 miles of their family residences. See id.

---

purpose. [Petitioner's] story also clashed with Trejo-Diaz's statements. . . . [T]he trooper asked [Petitioner] whether he had ever been in trouble with the law and whether there were any drugs in the SUV. [Petitioner] answered, "No," to both questions. The trooper then asked if he could search the SUV and, without hesitation, [Petitioner] responded, "Sure." . . . [The] troopers removed the SUV's rear seat and discovered a hidden compartment containing thirteen wrapped packages of methamphetamine. [Petitioner unsuccessfully sought suppression of this evidence asserting that it was obtain by an unlawful search.]

United States v. Buenrostro, 454 F. App'x 523, 524 (8th Cir. Neb. 2011). Petitioner is 61 years old, and his anticipated release date is October 23, 2022. See <<http://www.bop.gov/iloc2/InmateFinderServlet?Transaction=IDSearch&needingMoreList=false&IDType=IRN&IDNumber=36884-079&x=114&y=26>>.

The Petition also suggests that Petitioner's instant Section 2241 challenges were not exhausted administratively. See id. at 6.

The Petition is deficient in many ways.

To start, Petitioner's Section 2241 challenges had to be exhausted administratively and, thus, are subject to dismissal, without prejudice, on that ground.[3] Next, Petitioner's claims raised on behalf of his family members are subject to a prejudicial dismissal for lack of standing.[4]

---

[3] Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies. See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).

[4] Under the "next friend" doctrine, standing is allowed to a third person to file and pursue a claim on behalf of someone who is unable to do so. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990). The Whitmore Court set out two requirements for one seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [he] seeks to litigate"; and (2) "the 'next friend' must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64. Since Witmore, the Supreme Court further elaborated the standing test, stressing that the litigant must demonstrate an injury in fact that is fairly traceable to the challenged actions of the defendant and likely to be redressed by a favorable judicial decision. See Steel Co. v. Citizens for Better Environment, 523 U.S. 83, 102-103 (1998); see also, Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 301 (2008) (Roberts, J., dissenting) ("The absence of any right to the substantive recovery means that

Moreover, Plaintiff's own claims asserting disparate treatment are also subject to dismissal: this time, for lack of habeas jurisdiction.

A habeas corpus petition is the proper mechanism for a federal prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), e.g., a calculation of his term of imprisonment or a determination resulting in loss of good time credits affecting that term.  See Muhammad v. Close, 540 U.S. 749 (2004); Edwards v. Balisok, 520 U.S. 641 (1997).  In addition, where a prisoner seeks "quantum change" in the level of custody, e.g., by asserting undue denial of release on bond or parole, habeas is the appropriate form of action.  See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) (collecting cases).  Analogously, a challenge to denial of transfer *to* a qualitatively less-restrictive environment might present a habeas claim.  See, e.g., Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 237 (3d Cir. 2005) (denial of transfer to a community corrections center).

---

respondents cannot benefit from the judgment they seek and thus lack Article III standing. 'When you got nothing, you got nothing to lose'") (quoting, with correction of grammar, Bob Dylan, Like A Rolling Stone, in On Highway 61, Revisited (Columbia Records 1965)).  Here, Plaintiff cannot proceed jus tertii on behalf of his family members since no statement made in the Complaint suggests, even vaguely, that Plaintiff's family members lack capacity to seek vindication of their own claims.

In contrast, challenges to a garden-variety transfer (or denial of such transfer) cannot present a habeas claim. See McCall v. Ebbert, 384 F. App'x 55 (3d Cir. 2010); Ganim v. Federal Bureau of Prisons, 235 F. App'x 882 (3d Cir. 2007).

Moreover, had the jurisdictional deficiencies not warranted dismissal of Petitioner's application at bar, his constitutional challenges would still be subject to dismissal, since he has no liberty interest in being housed at the facility of his choice (or at the facility located within the geographic region of his choice). See Wilkinson v. Austin, 545 U.S. 209 (2005); Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1996); Montanye v. Haymes, 427 U.S. 236, 243 (1976). The matters of placement of prisoners are among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." Meachum, 427 U.S. 225.

Furthermore, had the Court somehow ignored all above-listed jurisdictional and due process deficiencies and focused solely on the equal protection aspect of Petitioner's claims, his challenges would still be subject to a prejudicial dismissal. As a removable alien, Petitioner is not a member of a suspect class, or otherwise subject to heightened scrutiny. See Vasquez-Velezmoro v. INS, 281 F.3d 693, 697 (8th Cir. 2002) (citing Plyler v. Doe, 457 U.S. 202(1982)).

Therefore, his equal protection claims must be analyzed under the deferential rational-basis standard. See id. Under the rational-basis review, "[t]he government's different treatment of persons will 'be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id. (quoting FCC v. Beach Commnc'ns, Inc., 508 U.S. 307, 313 (1993)).  Since, unlike United States citizens, removable aliens face potential deportation from this country and, correspondingly, permanent severance from the communities of their United States abode, this distinction provides a rational basis for the classification, that is, had the Court presumed that such classification is, actually, in place and applied by the BOP.[5]  Indeed, "[t]he relevant Policy Statement, P.S. 5100.6, Security Designation Custody Classification Manual, provides that nearer release transfers are ordinarily granted to inmates who will be returning to the community within, rather than outside, the United States upon release.  With release [about a decade] away, [Petitioner's] request for a transfer does not comport with the usual BOP policy with regard to nearer release transfers just

---

[5] In light of the deficiencies plaguing Petitioner's instant application, this Court need not direct responsive pleading and, correspondingly, need not and cannot determine whether the classification alleged by Petitioner is actually in place and operable or it is merely a product of Petitioner's imagination. The Court, therefore, makes no factual findings as to that issue.

prior to release. Thus, [his] equal protection discrimination claim is without a legal basis and [should be] dismissed." Caderno v. Thoms, 50 F. App'x 200, 2001 (6th Cir. 2002).

In sum, no matter how the Court were to slice Petitioner's challenges seeking his transfer to a California facility, these challenges are subject to dismissal for lack of jurisdiction, as well as for being unexhausted, and also for lack of standing, and – in addition – as facially meritless substantively.[6]

---

[6] While this observation has no immediate bearing on the Court's analysis conducted herein, the Court notes, in passing, that "direct," that is by-air, distance from Nebraska (where Petitioner was apprehended committing the offenses underlying his current term of imprisonment) to California (where Petitioner's family allegedly resides) is 1,092.64 miles. See <<http://www.distancefromto.net/distance-from/Nebraska/to/California>>. The driving distance from Nebraska to California is 1,537 miles. See <<http://www.travelmath.com/drive-distance/from/Nebraska/to/California>>. This substantial distance, however, did not prevent Petitioner, who was at the time of his criminal offenses at issue 57 years old, from leaving his family (and his alleged community ties) in California and persisting at his endeavors in Nebraska: distributing methamphetamine. See USA v. Buenrostro, 09-0383 (LES) (D. Neb.), Docket Entry No. 1. Indeed, it seems Petitioner was well accustomed to being away from his family. See id., Docket Entry No. 136, at 3 (indicating that, right prior to his criminal venture to Ogallala, Nebraska, Petitioner was spending his time crossing the border to and from Mexico). Moreover, "[Petitioner's defense counsel] had negotiated a favorable plea agreement with the government that would [have] allow[ed] for a sentence of 10 years, as opposed to a guidelines sentence of 360 months to life. [The counsel] stated that [Petitioner's] family supported the negotiations, but [Petitioner] himself would not accept the negotiated sentence and [stated that he] did not care if he served life." Id. at 2. Only facing his conviction and post-criminal-term removal from the United States, Petitioner finally turned his interests to his family. See id. at 6-7 (Petitioner's defense counsel statement that "[Petitioner] has no family in Mexico as all of his family members [we]re residing [somewhere] in the United States. [Thus, Petitioner eventually]

Because the aforesaid deficiencies cannot be cured by repleading, and thus granting Petitioner leave to amend would necessarily be futile, such dismissal should be with prejudice. See Foman v. Davis, 371 U.S. 178, 182 (1962); Coventry v. U.S. Steel Corp., 856 F.2d 514, 519 (3d Cir. 1988).

An appropriate Order accompanies this Opinion.

S/Robert B. Kugler
**Robert B. Kugler,**
**United States District Judge**

Dated: January 9, 2013

---

told [his defense counsel] that he would [prefer to] get a long sentence so that he could remain in the United States [in hope that he might be housed] near his family. [Acting on that hope, d]espite [his counsel's] advice, [Petitioner] rejected the government's plea agreement, and [directed his counsel to take] his case to trial"). While Petitioner's now developed interest in keeping a contact with his family is indeed understandable, and this Court is sympathetic to the same, Petitioner, who – as a result of his own decisions – will be about 70 years old at the time of his release, cannot now blame the BOP's legally valid housing choice for the lack of materialization of his hopes and criminal trial strategies.